May it please the Court, my name is Daniel Donovan, I'm from Great Falls, Montana. I represent Cody Carlsen. I'd like to reserve two minutes if I may for rebuttal. This is, quite frankly, not a garden variety claim of excusable neglect, as the government suggests, nor is it a simple miscalculation made by a lawyer missing a deadline. If you take a look at page ER 110, you'll see Mr. Carlsen's reasons for why he missed the one-year deadline. And I think these reasons show, number one, that he was diligent, and number two, that there are extraordinary circumstances here which justify equitable tolling. At sentencing, four people, four trained people, trained in the guidelines and using it every day, experts at it really, not only the judge, as well as the probation officer, the assistant U.S. attorney, the public defender, all missed the application of the guidelines section here, 5G 1.2. And it seems to me that that's the most extraordinary circumstance here. Here's an individual who got sentenced without consideration of that, and the government seems to concede that there was error on that score. They have, yes. So the real critical issue for you is whether or not you can get over the timeliness issue. Yes. Correct? That's correct. So as I understand it, you advanced two arguments in support of equitable tolling. Is that right? Advanced two arguments? Yes. Well, I think I have a lot of arguments. Well, there are two main ones. One, they seem to be critical here, one, that he was in transit for he said in his little statement that he was in transit for a significant period of time as a result of his having to go back to state court. Well, that's the best. Isn't that right? And he said he's without any resources to legal material. Well, and he didn't get back from to federal custody from or to federal custody from state custody until after the one year had run. And his lawyer had told him to wait until he got out of state custody into federal custody, and by then it was too late. And, again, he had asked. How long was he in transit, and do we know when he got back into federal custody? And why does that make a difference? Well, his lawyer told him to wait until he got back into federal custody before he took action on trying to do something about a sentence. His lawyer also told him that he could consult with or work with the Bureau of Prison to get some sort of correction with a sentence, which obviously he couldn't. And then, finally, he had requested numerous times a package from the Defender Office, the 2255 forms, that he didn't receive until March of 2009 after he was back in federal custody. And he did file his 2255 petition. I guess I need to be just to be a little bit more specific. He said that he was without resort to legal material during that period that he was in transit. That, I believe. What do we know about that? Well, that, I believe, was the first six-month period after the sentencing and on his way back to state court or wherever he was in the North Dakota state court system, as far as I can tell from the record. Is that an adequate basis for equitable tolling? That alone I don't think is. Why not? Well, it could be alone, but I think we have a lot more here with him relying on his lawyer on advice, telling him not to appeal. You know, he was never told about the one-year statute of limitations. Do you think his lawyers basically abandoned him? I do. Okay. And I think it's unfortunate. I was a public defender at one time. I might have made the same mistake, but I think here there's got to be some correction of this mistake because the consequences to Mr. Carlson are so severe here of all the extra prison time he's serving. Do you think we ought to remand this back for an evidentiary hearing on the equitable tolling issue? Pardon me? Do you think we ought to remand this back for an evidentiary hearing on equitable tolling? I don't think we necessarily need a hearing here. I think there's enough in the record from what Mr. Carlson says. And it's basically confirmed, I think, by the filing of his documents, that he didn't get the material from the Federal Public Defender Office until March of 2009, and he filed this fairly promptly. He filed his petition here, Section 2255 petition, the first part of April. It's also pretty clear that nobody told him about the one-year statute of limitations. It wasn't told to him by the judge in the courtroom. And there's no indication in the record that he was told that by his counsel either. In fact, his counsel told him to wait the specific time. Counsel, Judge Gould, if I could ask a question, please. It's sort of fundamental in my mind, and that's this. I think the Supreme Court, in the Pace case, makes due diligence one of the prerequisites to getting equitable tolling. If that's so, then how can we make a conclusion on the existing record about the due diligence of your client? In other words, wouldn't there have to be some sort of evidentiary hearing where the government and your client could talk about what was he told by his lawyer or what did he tell the lawyer? In other words, how do we know that he was diligent in trying to proceed on this? You could order a hearing, obviously, but what I'm saying is I think there's enough in the record from what he says that he tried to call his lawyer, wrote numerous letters, didn't get a response, was told by the lawyer to wait until he got back into federal custody, which he did. So most of the things my client would assert at a hearing I think are already in the record. Does the record show what the lawyer would say in response to that? No, it doesn't. It's essentially akin to an IAC case on direct appeal where we don't have any response from the federal defender's office. But, of course, Judge Haddon didn't request a response when he made his ruling either. He just denied it right out. Right. And the other thing. A prescreening sort of scenario. Right. The other thing that concerns me is if you read carefully Judge Haddon's order denying the 2255 motion, Judge Haddon first off doesn't reference the specific guidelines, Section 5G1.2, nor does Judge Haddon reference the case, the Armstead case, which we cited, and the government's agreed with that, that I think provides the prevailing authority for this case. Now, you've asked for a different judge on remand. Why is that? Because Judge Haddon has already decided, given his justification for why he thinks the 47 months is reasonable. Yeah, but he didn't have this guideline before. Nobody pointed it out. But I would say he ignored the guidelines and ignored the Armstead case, so instead of recalculating the guideline provision and saying, well, for these reasons I'm going higher than the guidelines or I'm not going to give credit for time served or a concurrent sentence. Do we know that Judge Haddon had the guideline and Armstead before him? Or are we just relying on judges are impeccable and omniscient and know all the law? It's not there and the case has been decided, so that's all I'm going by, Your Honor. I thought in his ruling on the 2255 that he referenced. He referenced the argument. The guideline. I didn't find the reference. I thought that in the motion that Mr. Carlson referenced the guideline. Mr. Carlson did reference, but I don't know how. So technically it was in front of Judge Haddon at the time he ruled on the 2255. Right. But he didn't reference it in his order. He just gave the reasons. No, but Carlson brought it to his attention. It seems to be the flavor of Judge Haddon's ruling on the 2255. That's correct, but he didn't reference the Armstead case either, Your Honor, and that had, I think, really sort of a mandatory language.  I don't happen to recall if Carlson mentioned Armstead. Carlson did not mention Armstead. When he filed it. He did mention the guideline. He did mention the guideline, but not the Armstead case. That's right. I'd like to reserve the remainder. Thank you. Ms. McCann. Good morning. Paulette Stewart, Assistant United States Attorney for the District of Montana. Frankly, our position is Judge Haddon should be affirmed with the denial of Mr. Carlson's 2255 motion. There's no dispute the motion was late. The big dispute really in my mind is whether or not equitable tolling applies. It's my position it doesn't apply. Number one, he didn't exercise due diligence, which is what the district court found. And number two, the defendant, or Mr. Carlson, has also not shown that there were these The district court in its ruling gave him the six months that he was in transit and didn't have access to the legal resources, said, okay, you've got that six months. That's more or less, I guess, excused for lack of a better term. But as the district court noted out, also noted, he had six additional months to make it. If equitable tolling applied, it stopped the clock and he had one year from that time period to file. He didn't just have the additional remaining six months on the one-year statute of the patients. He had one year. And if you do it that way, if he gets equitable tolling from the beginning, from the get-go, his one year would have extended beyond the time he filed his 2255 and it would have been timely. But then the next question is, does equitable tolling actually apply? Because was he exercising his due diligence? Right. But you just said the judge hadn't gave it to him. Well, the judge basically said... Now, wait a minute. You were willing to take it when he thought it was to your advantage. Now you find out you've miscalculated. So you don't really want to walk back from that, do you? Well, basically the judge... It's at ER 129 where the judge basically says, Carlson states he lacked access to legal resources for six months, and this is quoting out of his order, that leaves six months during which he could have learned of the limitations period. So I guess I overstated what the judge said. Counsel, Judge Gould, if I could ask you a question. Yes, Your Honor. And you probably know the answer and can give it to me easily because lawyers in Montana are straight shooters. So here it is. If the judge had applied that guideline 5G 1.33B, if he had applied it instead of not applying it, and if the sentences were concurrent, and if Mr. Carlson got credit for the time served, how much difference is there in the time that the guy has to serve? In other words, what does it cost him in incarceration? Your Honor, it was approximately 15 months was the difference when we were writing and filing the briefs. One thing, if we get to the point of resentencing that I thought was interesting, was Mr. Carlson in his 28-J letter says, hey, look at Riviera Gomez as well. We've got the 5G 1.3 issue, which basically we all talked around at sentencing. If you read the sentencing transcript, Carlson's trial attorney says, please give him credit for time served and run it concurrently. I ask for a high-end sentence run consecutively, and then the judge ultimately sentences Mr. Carl to a high-end consecutively. So we all basically talked around 5G 1.3, but none of us actually said United Sentencing Guidelines Section 5G 1.3 applies in this case. You know, obviously, the guidelines are advisory, but this Riviera ---- We've said, though, repeatedly that you have to have a correct guideline calculation. It's pretty clear here that Judge Haddon would have had to have ended the guideline calculation by giving him credit for the time that he served on this related State court sentence. Or said why he wasn't going to. But he had to at least ---- Well, he would have had to give it to him under the guidelines as long as that State-related offense was used to increase his guideline sentence. Right. Then when he got from 2250, the ---- The 3538. The 3538 factors, he would have, could have fixed another sentence. And that's actually ---- He would have had to give a reason, you know, an explanation and whatnot. Yes, Your Honor. And then that was also my point about the Riviera-Gomez case that Mr. Carlson pointed out in the 28-J letter, is Gomez was an alien case and said, you know, the one point, Mr. Carlson's point was the one point that was added into criminal history should not have been added as well. But the Riviera-Gomez court also said when it goes back for resentencing, it's on an open record, and these additional enhancements could apply, say, the official victim enhancement and other enhancements, and that may also be the case here. Are there other potential ---- I didn't see any in the record. Were there others? Well, you know, and like I said, this was something just, number one, another potential charge, felony charge against Mr. Carlson at the time would have been child neglect or endangerment, because the 5-year-old was at home literally on his own. He mentioned that when he ---- Yes. Judge Files, I'm having trouble picking up your sound. It may be your mic. It's my mic. Thank you. And then the other potential was the victims and the reckless endangerment count from North Dakota were all law enforcement officers. So, I mean, so there are ---- this may be a case where if equitable tolling applies and we get back to resentencing, Mr. Carlson may find himself in a situation like Mr. Bad Marriage. Well, it's always ---- You need to be careful as to what you wish for. Right. Well, but it's always possible that the district court judge would come up with the same sentence. I realize that. But nonetheless, our guidelines are pretty clear about ---- I mean, our case law is pretty clear about what happens when there's been a mistake in the calculation of the guidelines. Yes, sir. And you acknowledge that there was a mistake here. We do, because none of us actually ---- And then sort of like your argument here today, you sort of give a half-hearted argument in support of not showing equitable tolling. But it is our position that equitable tolling is the case. I understand. Yes. Counsel? Yes, Your Honor. Ms. Gould, if I could ask you another question for another straight-shooter answer here. That is, what's your response to Judge Piazza's question asked to Appellant's lawyer? That is, should we remand to the district court for an evidentiary hearing on factual issues pertinent to equitable tolling? You know, Your Honor, I think that is the first step, if the case comes back. Because in ER 110, what the entire case is based off of, obviously, is Mr. Carlson's statement as to a, I guess, a timeline, if you will, but it's not a very specific timeline. I mean, we've got six months, no access to legal resources. We have numerous phone calls and messages. We have this notification of this Motion 2255, which he refers to in his recitation of facts. And after he finds out about this Motion 2255 packet, he then waits for several months before calling trial counsel back to say, I haven't received my packet, versus doing anything on his own to figure out what this Motion 2255 is. And so I think that is what, if I guess you could hop into the mind of the district court, why the district court says he wasn't exercising due diligence is he's doing stuff, but then at this one point, he basically stops. He stops doing anything, and he's got access to legal resources. He's not saying during this time, I don't have access to legal resources. I'm just waiting. Thank you. I have one last question for you. Yes, Your Honor. Counsel has asked that on remand, if we remand the case, that it go back to a different judge. What's your response to that? And keep in mind that what we have is Judge Haddon's initial ruling and his ruling on the motion on the 2255. Number one, I don't think he's met his burden. I don't think he can show that the court can't put his prior rulings out of his mind. And number two, I don't think he can show that the potential for bias exists in this case. So I think if this court were to remand for further hearings on equitable tolling, I think Judge Haddon is more than capable of making those rulings. Okay. Thank you. All right. Counsel, do you have anything? I may make two quick points. The first is, my client is scheduled to be released from the Bureau of Prisons a year from now, I think a couple days ago, early in June of 2012. So I'd ask the Court if the Court's inclined to rule in his favor to consider releasing him on appeal. And I want to point out, if I could quickly, what I think is condemned by the Armstead case, and that is what's, quote, duplicative consideration of the same criminal conduct. What happened here is he got a four-level enhancement and added 17 months to his guideline range, and that's all that he should have gotten. But because 5G 1.3 wasn't applied, he did another 15 months because he didn't get credit for time served before he went into federal custody. He got an additional 13 months of time because he didn't get a concurrent sentence. He got a consecutive sentence. And he also got an additional nine months of time on his criminal history category. So he's way over the top as far as additional time goes, and that's further consideration from the no credit for time served. All right. Thank you very much. Thank you very much. Thank you, Counsel. Case is submitted. Thank you.
judges: Fisher, Gould, Paez